IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| NGM Insurance Company and<br>Main Street America Assurance Company,<br><br>        Plaintiffs,<br><br>v.<br><br>Sligh Construction Service Co., Inc., M.B.<br>Kahn Construction Co., Inc., and LeChase<br>Construction Services, LLC,<br><br>        Defendants. | C/A No. 3:21-cv-02995-MGL<br><br><br>**AMENDED COMPLAINT** |

Plaintiffs respectfully allege the following in support of their request for entry of a judgment declaring that the insurance policies described below do not obligate Plaintiffs to indemnify Defendants for the losses that Defendants may occur because of that certain lawsuit that Richland School District Two is maintaining in the South Carolina Court of Common Pleas for Richland County under civil action # 2019-CP-40-05715 (the "State Court Action").

**JURISDICTION AND VENUE**

1.      NGM Insurance Company ("NGM") and Main Street America Assurance Company ("MSA") are licensed insurance companies domiciled in and maintaining their principal place of business in Florida.

2.      M.B. Kahn Construction Co., Inc. ("Kahn") is a corporation duly formed and existing under the laws of South Carolina that maintains its principal place of business in Richland County, South Carolina.

3.      Sligh Construction Service Co., Inc. ("Sligh") is a corporation duly formed and existing under the laws of South Carolina that maintains its principal place of business in Newberry

County, South Carolina.

4.      LeChase Construction Services, LLC ("LeChase") is a corporation duly formed and existing under the laws of New York, where it maintains its principal place of business. LeChase is subject to this court's exercise of specific personal jurisdiction because:

   a.  LeChase has had continuous contacts with South Carolina since 2004 when it obtained a certificate of authority from the South Carolina Secretary of State to conduct its construction business in South Carolina;

   b.   LeChase has purposely availed itself of the benefit of South Carolina law while conducting its operations in South Carolina since 2004, including the operations in Richland County that are at issue in this case;

   c.  LeChase is currently engaged with Plaintiffs in defending the State Court Action in Richland County, South Carolina, which is the basis of this lawsuit; and

   d.   this court's exercise of jurisdiction over LeChase would not violate the principles of fair play and substantial justice.

5.      This court possesses subject matter jurisdiction under 28 U.S.C. 1332 because complete diversity exists and the amount in controversy exceeds the requirements of 28 U.S.C. 1332, as the indemnity sought by the Defendants under the agreements with Plaintiffs exceed $75,000.00.

6.      Venue is proper in the Columbia Division of The United States District Court for the District of South Carolina under 28 U.S.C. 1391 because a substantial part of the events or omissions giving rise to the claim occurred in Richland County, South Carolina.

## THE STATE COURT ACTION CLAIMS

7.  On October 9, 2019, Richland County School District Two ("District Two") filed the State

Court Action against the Defendants and others; and District Two amended that Complaint on October 23, 2019. A true and accurate copy of the Amended Complaint in the State Court Action is attached hereto as <u>Exhibit A</u> (the "State Court Complaint").

8.    In the State Court Compliant, District Two alleges claims against the Defendants for breach of contract, breach of warranties, and negligence; in relevant part, District Two alleges:

      a.    that on May 4, 2010, it contracted with LeChase for the construction of a building and a stadium at Westwood High School (the "Project") at a contract price of $6,489,800;

      b.    that it contracted with Kahn for construction management services in connection with the Project;

      c.    that Sligh was retained to assist LeChase with the design and installation of the underground drainage system;

      d.    that because of the Defendants' breaches of contract, warranties, and duties, the underground drainage system and associated components were defective, were not designed correctly, and were not installed correctly or in accordance with the plans and specifications, and Defendants failed to correctly protect and ensure that the underground drainage system was not damaged during the construction of the Project;

      e.    that as a result, the underground drainage system collapsed and was substantially damaged, which has resulted in a sinkhole near the stadium, required temporary repairs, and requires permanent repair.

9.    Each Defendant answered District Two's Complaint, and LeChase included cross-claims for contractual and equitable indemnity against Sligh in its Amended Answer to the State

Court Complaint. A true and accurate copy of LeChase's Amended Answer and Cross-claims in the State Court Action is attached hereto as <u>Exhibit B</u> (the "Cross-Claims").

10.    In the State Court Action, District Two has provided discovery responses that demonstrate that its damages are $946,757.00 for "corrective work" performed on the underground drainage system; $23,632.50 in "fees" related to the corrective work performed by Cox & Dinkins; and cost of repairing and replacing the underground drainage system, which is estimated between $787,700 and $1,464,803.50. The relevant portion of these discovery responses are attached hereto as <u>Exhibit C</u>.

### THE 2010 NGM OMNIBUS/CONTRACTORS POLICY

11.    NGM issued to Sligh, the named insured, that certain Omnibus/Contractors Policy bearing number MP043663 and effective January 20, 2010 (the "2010 Contractors Policy"). The relevant portions are attached hereto as <u>Exhibit D</u>.

12.    Par. A, sec. 1, part a. of the Businessowners Liability Coverage Form (BP 00 06 01 97) ("BLCF") of the 2010 Contractors Policy states that NGM:

> *will pay those sums that the insured becomes legally obligated to pay as damages because of … "property damage"[1] … to which this insurance applies.*

13.    Additionally, Par. A, sec. 1, part b. of the BLCF of the 2010 Contractors Policy clarifies, in relevant part, that:

> *this insurance applies to … "property damage" only if:*
>
> *(a) [t]he … "property damage" is caused by an "occurrence"[2] that takes place in the coverage territory….*
>
> *(b) the … "property damage" occurs during the policy period.*

---

[1] Par. F, sec. 15 of the BLCF of the 2010 Contractors Policy defines "*property damage.*"

[2] Par. F, sec. 12 of the BLCF of the 2010 Contractors Policy defines "*occurrence.*"

14.    Par. B, sec. 1, part b. of the BLCF of the 2010 Contractors Policy contains the **Contractual Liability Exclusion**, which provides, in relevant part, that NGM's insurance coverage does not apply to "*property damage*"

> *for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement.*

15.    Additionally, Par. B, sec. 1, part j of the BLCF of the 2010 Contractors Policy contains the **Professional Services Exclusion**, which provides, in relevant part, that NGM's insurance coverage does not apply to "*property damage*"

> *due to rendering or failing to render any professional service. This includes, but is not limited to: ...*
>
> *(2) Preparing, approving, or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs and specifications;*
>
> *(3) [s]upervisory, inspection or engineering services.*

16.    Additionally, Par. B, sec. 1, part k of the BLCF of the 2010 Contractors Policy contains the **Damage to Property Exclusion**, which provides, in relevant part, that NGM's insurance coverage does not apply to "*property damage*" to

> *(5) [t]hat particular part of real property on which [Sligh] or any contractor or subcontractor working directly or indirectly on [Sligh's] behalf is performing operations, if the "property damages" arises out of those operations; or*
>
> *(6) [t]hat particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.*

17.    Additionally, Par. B, sec. 1, part m of the BLCF of the 2010 Contractors Policy contains the **Damage to Your Work Exclusion**, which provides, in relevant part, that NGM's insurance coverage does not apply to "*property damage*"

> *to "your work" arising out of it or any part of it and included in the*

*"products-completed operations hazard."[3]*

18.    Additionally, Par. B, sec. 1, part n of the BLCF of the 2010 Contractors Policy, as amended by Contractors Extension Endorsement, contains the **Damage to Impaired Property or Property Not Physically Injured Exclusion**, which provides, in relevant part, that NGM's insurance coverage does not apply to "*property damage*"

> to "*impaired property*"[4] or property that has not been physically  injured, arising out of:
>
> (1) A defect, deficiency, inadequacy or dangerous condition in ... "your work"; or
>
> (2) A delay or failure by [Sligh]  or anyone acting on [Sligh's] behalf to perform a contract or agreement in accordance with its terms.

19.    Additionally, Par. B, sec 1, part o of the BLCF of the 2010 Contractors Policy contains the **Recall of Products, Work or Impaired Property Exclusion**, which provides, in relevant party, that NGM's insurance coverage does not apply to "Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

> (1) "Your product;"
>
> (2) "Your work;" or
>
> (3) "Impaired property;"

if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy, or dangerous condition in it."

---

[3] Par. F, sec. 19 of the BLCF of the 2010 Contractors Policy defines "*your work*," and Part F, sec. 14 defines "*products-competed operations hazard*."

[4] Par. F, sec. 7 of the BLCF of the 2010 Contractors Policy defines "*impaired property*."

20.    LeChase and Kahn became scheduled additional insureds in the 2010 Contractors Policy effective August 23, 2010. As stated in Form 64-8218 of the 2010 Contractors Policy, this added LeChase and Kahn to the definition of "**Who is An Insured**" in Par. C of the BLCF of the 2010 Contractors Policy, but only with respect to liability for:

> *"property damage" … caused in whole or part, by: a. [Sligh's] acts or omissions; or b. [t]he acts or omissions of those acting on [Sligh's] behalf; in the performance of [Sligh's] ongoing operations or "your work" included within the "products-completed operations" hazard for [LeChase and Kahn] at the location(s) designated above and described in the written contract or agreement.*

### THE 2011-2015 MSA BUSINESSOWNERS POLICIES

21.    On January 20, 2011, Sligh's Omnibus /Contractors policy was renewed and converted to MSA's Main Line Businessowners Policy bearing number MP043663 ("2011 BOP"). The relevant portions are attached hereto as Exhibit E.

22.    Par. A, sec. 1, part a. of the Businessowners Coverage Form (BPM P 2 1207) ("BCF") of the 2011 BOP states that MSA:

> *will pay those sums that the insured becomes legally obligated to pay as damages because of … "property damage"[5] … to which this insurance applies.*

23.    Additionally, Par. A, sec. 1, part b. of the BCF of the 2011 BOP clarifies, in relevant part, that:

> *this insurance applies to … "property damage" only if:*
>
> *(a) The … "property damage" is caused by an "occurrence"[6] that takes place in the coverage territory….*
>
> *(b) the … "property damage" occurs during the policy period.*

---

[5] Par. F, sec. 17 of the BCF of the 2011 BOP defines "*property damage.*"

[6] Par. F, sec. 13 of the BCF of the 2011 BOP defines "*occurrence.*"

24.    Par. B, sec. 1, part b. of the BCF of the 2011 BOP contains the **Contractual Liability Exclusion**, which provides that MSA's insurance coverage does not apply to "*property damage*"

> *for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement.*

25.    Additionally, Par. B, sec. 1, part j of the BCF of the 2011 BOP contains the **Professional Services Exclusion**, which provides, in relevant part, that MSA's insurance coverage does not apply to "*property damage*"

> *caused by the rendering or failing to render any professional service. This includes, but is not limited to: ...*
>
> *(2) Preparing, approving, or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs and specifications;*
>
> *(3) [s]upervisory, inspection or engineering services.*

26.    Additionally, Par. B, sec. 1, part k of the BCF of the 2011 BOP contains the **Damage to Property Exclusion**, which provides, in relevant part, that MSA's insurance coverage does not apply to "*property damage*" to

> *(5) [t]hat particular part of real property on which [Sligh] or any contractor or subcontractor working directly or indirectly on [Sligh's] behalf is performing operations, if the "property damages" arises out of those operations; or*
>
> *(6) [t]hat particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.*

27.    Additionally, Par. B, sec. 1, part m of the BCF of the 2011 BOP Policy contains the **Damage to Your Work** exclusion, which provides, in relevant part, that MSA's insurance coverage does not apply to "*property damage*"

> *to "your work" arising out of it or any part of it and included in the*

*"products-completed operations hazard."[7]*

28.    Additionally, Par. B, sec. 1, part n of the BCF of the 2011 BOP Policy, as amended by Contractors Extension Endorsement, contains the **Damage to Impaired Property or Property Not Physically Injured Exclusion**, which provides, in relevant part, that MSA's insurance coverage does not apply to "*property damage*"

> to "*impaired property*"[8] *or property that has not been physically injured, arising out of:*
>
> (1) *A defect, deficiency, inadequacy or dangerous condition in … your work"; or*
>
> (2) *A delay or failure by [Sligh] or anyone acting on [Sligh's] behalf to perform a contract or agreement in accordance with its terms.*

29.    Additionally, Par. B, sec 1, part o of the BCF of the 2011 BOP Policy contains the **Recall of Products, Work or Impaired Property Exclusion**, which provides, in relevant party, that NGM's insurance coverage does not apply to "Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

> (4) "Your product;"
>
> (5) "Your work;" or
>
> (6) "Impaired property;"

if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy, or dangerous condition in it."

---

[7] Par. F, sec. 22 of the BCF of the 2011 BOP defines "*your work*," and Par. F, sec. 16 defines the "*products-competed operations hazard*."

[8] Par. F, sec. 9 of the BCF of the 2011 BOP defines "*impaired property*."

30.     LeChase and Kahn remained scheduled additional insureds in MSA's 2011 BOP. As stated in Form BPM 3102 1207 of the 2011 BOP, LeChase and Kahn were included in the definition of "**Who is An Insured**" in Par. C of the BCF of the 2011 BOP, but only with respect to liability for:

> *"property damage" … caused in whole or part, by: a. [Sligh's] acts or omissions; or b. [t]he acts or omissions of those acting on [Sligh's] behalf; in the performance of [Sligh's] ongoing operations or "your work" included within the "products-completed operations" hazard for [LeChase and Kahn] at the location(s) designated above and described in the written contract or agreement.*

31.     MSA and Sligh renewed the BOP Policy in substantially the identical form, in relevant parts in January 2012, January 2013, and January 2014. The renewals as included in <u>Exhibit E</u>.

32.     The BOP was cancelled flat effect January 20, 2015, due to non-payment of insurance premiums.

### THE 2010-2015 NGM UMBRELLA POLICIES

33.     Effective January 20, 2010, Sigh purchased a commercial liability umbrella declaration from NGM (the "2010 Umbrella"), which remained effective through January 20, 2011. The relevant portions of the 2010 Umbrella are attached hereto as <u>Exhibit F</u>.

34.     Effective January 20, 2011, Sigh purchased a commercial liability umbrella declaration from NGM (the "2011 Umbrella"), which remained effective through January 20, 2012. The relevant portions of the 2010 Umbrella are attached hereto as <u>Exhibit G</u>.

35.     Effective January 20, 2012 Sigh purchased a commercial liability umbrella declaration from NGM (the "2012 Umbrella"), which remained effective through January 20, 2013. The relevant portions of the 2010 Umbrella are attached hereto as <u>Exhibit H</u>.

36.     Effective January 20, 2013, Sligh purchased a commercial liability umbrella

declaration from NGM ( the "2013 Umbrella"), which remained in effect through January 20, 2014. The relevant portions of the 2013 Umbrella are attached hereto as <u>Exhibit I</u>.

37.    Effective January 20, 2014, Sligh again purchased a commercial liability umbrella declaration from NGM (the "2014 Umbrella"), which remained in effect through January 20, 2015. The relevant portions of the 2014 Umbrella are attached hereto as <u>Exhibit J</u>.

38.    Sec. 1, Coverage A, par. 1, part a. of the Commercial Liability Umbrella Coverage Forms ("UCF") of the 2010-2013 Umbrella policies states that NGM will pay, on behalf of Sligh,

> the "ultimate net loss"[9] in excess of the "retained limit"[10] because of … "property damage"[11] to which this insurance applies.

39.    Sec. 1, Coverage A, par. 1, part b. of the UCF of the 2010-2014 Umbrella policies clarifies, in relevant part, that:

> this insurance applies to … "property damage" only if:
>
> (1) The … "property damage" is caused by an "occurrence"[12] that takes place in the coverage territory….
>
> (2) the … "property damage" occurs during the policy period.

The same language is found in the 2014 Umbrella policy at Sec. 1, Coverage A, par. 1, part c.(1)-(2) of the UCF.

40.    Additionally, Sec. 1, Coverage A, par. 2, part b. of the UCF of the 2010-2014 Umbrella policies contains the **Contractual Liability Exclusion**, which provides that NGM's insurance coverage does not apply to "*property damage*"

> for which the insured is obligated to pay damages by reason of the

---

[9] Sec. V, par. 23 of the UCF of the 2010-2014 Umbrella policies defines "*ultimate net loss*."

[10] Sec. V, par. 19 of the UCF of the 2010-2014 Umbrella policies defines "*retained limit.*"

[11] Sec. V, par. 18 of the UCF of the 2010-2014 Umbrella policies defines "*property damage.*"

[12] Sec. V, par. 13 of the UCF of the 2010-2014 Umbrella policies defines "*occurrence*."

*assumption of liability in a contract or agreement.*

41.    Additionally, Sec. 1, Coverage A, par. 2, part m. of the UCF of the 2010-2014

Umbrella policies contains the **Damage to Property Exclusion**, which provides, in relevant part,

that NGM's insurance coverage does not apply to "*property damage*" *to*

> (5) *[t]hat particular part of real property on which [Sligh] or any contractor or subcontractor working directly or indirectly on [Sligh's] behalf is performing operations, if the "property damages" arises out of those operations; or*

> (6) *[t]hat particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.*

42.    Additionally, Sec. 1, Coverage A, par. 2, part o. of the UCF of the 2010-2014

Umbrella policies contains the **Damage to Your Work** exclusion, which provides, in relevant

part, that NGM's insurance coverage does not apply to "*property damage*"

> *to "your work" arising out of it or any part of it and included in the "products-completed operations hazard."[13]*

43.    Additionally, Sec. 1, Coverage A, par. 2, part p. of the UCF of the 2010-2014

Umbrella policies contains the **Damage to Impaired Property or Property Not Physically**

**Injured Exclusion**, which provides, in relevant part, that NGM's insurance coverage does not

apply to "*property damage*"

> *to "impaired property"[14] or property that has not been physically injured, arising out of:*

> *(1) A defect, deficiency, inadequacy or dangerous condition in ... your work"; or*

---

[13] Sec. V, par. 28 of the UCF of the 2010-2014 Umbrella policies defines "*your work,*" and Sec. V, par. 17 of the UCF of the 2010-2014 Umbrella policies defines the "*products-competed operations hazard.*"

[14] Sec. V, par. 8 of the UCF of the 2010-2014 Umbrella policies defines "*impaired property.*"

> *(2) A delay or failure by [Sligh] or anyone acting on [Sligh's] behalf to perform a contract or agreement in accordance with its terms.*

44.    Additionally, Sec. 1, Coverage A, par. 2, part s. of the UCF of the 2010-2014 Umbrella policies contains the **Professional Services Exclusion**, which provides, in relevant part, that MSA's insurance coverage does not apply to "*property damage*"

> *caused by the rendering or failing to render any professional service. This includes, but is not limited to: ...*
>
> *(2) [p]reparing, approving, or failing to prepare or approve maps, shop drawings, opinions, reports, surveys, field orders, change orders, or drawings and specifications by any architect, engineer, or surveyor performing services on a project on which you serve as a construction manager;*
>
> *(3) [i]nspection, supervision, quality control, architectural or engineering activities done by or for you on a project on which you serve as a construction manager;*
>
> *(4) [e]ngineering services, including related supervisory or inspection services.*

45.    Additionally, Sec. 1, Coverage A, subsection 2, part q. of the UCF of the 2010-2014 Umbrella policies contains the **Recall of Products, Work or Impaired Property Exclusion**, which provides, in relevant party, that NGM's insurance coverage does not apply to "Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

> (7) "Your product;"
>
> (8) "Your work;" or
>
> (9) "Impaired property;"

if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy, or dangerous condition in it."

46.    Additionally, Section IV, par. 11 of the UCF of the 2010-2014 Umbrella policies contains the **Loss Payable** provision, which provides that NGM will have no liability to make payment under the respective Umbrella policies unless and until MSA is obligated to pay the "retained limit" under the respective BOPs.

<u>J</u>USTICIABLE <u>C</u>ONTROVERSY

47.    In 2019, after District Two initiated the State Court Action, Defendants asserted rights to insurance coverage and payment under the polices described above, and Defendants made claims for the provision of a defense from NGM and MSA.

48.    Due to the facts that have developed during discovery in the State Court Action, Plaintiffs disagree that they can owe the Defendants the duty to pay any damages claimed by District Two in its State Court Complaint or LeChase in its Cross-Claims.

49.    If there is no duty to indemnify any damages claimed by District Two in its State Court Complaint or LeChase in its Cross-Claims, then there is no duty to defend.

50.    Therefore, an actual, justiciable controversy between NGM and MSA and LeChase, Kahn, and Sligh concerning (1) whether, or to what extent, the policies above provide obligate Plaintiffs to pay for any amounts that either LeChase, Kahn, and Sligh could be come liable to pay in the State Court Action and, consequently, (2) whether a duty to defend under the policies can exist if the answer to the first question is negative.

51.    Pursuant to Rule 57, FRCP, and 28 U.S.C. § 2201, et seq., NGM and MSA respectfully seek judgment from this court declaring that, pursuant to their terms, the insurance policies discussed hereinabove do not provide coverage to the Defendants for the damages alleged by District Two in the State Court Action and, therefore, the duty to defend is obviated.

WHEREFORE, NGM and Main Street America pray for entry of judgment consistent with the

declaratory relief sought in the preceding paragraph, for an award of costs, and for such other relief as this court may deem just and proper.

Respectfully submitted:

s/Stephen Porter
Stephen D. Porter (Fed. I.D. 9100)
Shaun C. Blake (Fed. I.D. 10358)
Kevin Maroney, (Fed. I.D. 12377)
ROGERS LEWIS JACKSON MANN & QUINN, LLC
1901 Main Street, Suite 1200
Columbia, SC 29201
Tel: (803) 256-1268
Fax: (803) 252-3653
Email: sporter@rogerslewis.com
        sblake@rogerslewis.com

April 4, 2022                        ATTORNEYS FOR PLAINTIFFS